## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

APRIL SCANTLIN
         PLAINTIFF,

v.                            CASE NO.:

TOUCHPOINT SUPPORT
SERVICES, LLC.
         DEFENDANT.
_____/

## COMPLAINT

Plaintiff, APRIL SCANTLIN, (hereinafter referred to as the "Plaintiff" or "SCANTLIN"), by and through her undersigned attorney, sues Defendant, TOUCHPOINT SUPPORT SERVICES, LLC. (hereinafter referred to as the "Defendant" or "Touchpoint"), and alleges as follows:

### *JURISDICTION AND VENUE*

1.    This is an action to remedy discrimination on the basis of sexual harassment, gender, disability, FMLA discrimination, hostile work environment and retaliation for engaging in a protective activity in the terms, conditions, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.,S.C. 2000e, et seq.; the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008; 29 USCS §§ 2611 et seq; and the Family Medical Leave Act ("FMLA").

2.    Defendant is considered an employer within the terms and conditions

1

of the Family Medical Leave Act ("FMLA"). Defendant employs fifty (50) or more employees within 75 miles of the worksite of Plaintiff.

3.     Plaintiff worked for Defendant from May of 2017, until her unlawful termination on June 4, 2020. Plaintiff is considered an "eligible employee" for purposes of the FMLA as he has been employed: (1) for at least 12 months by Defendant, and (2) for at least 1,250 hours of service with Defendant in the previous 12-month period.

4.     The FMLA does not contain an exhaustion requirement and Plaintiff is not required to exhaust administrative remedies before bringing suit.

5.     Plaintiff further seeks declaratory, injunctive, and equitable relief pursuant to 28 U. S. C. §§ 2201, 2202 and 42 U.S.C. § 2000e-5(g).

6.     Costs and attorney's fees are sought pursuant to 42 U.S.C. §2000e-5(k), Fed. R. Civ. P. 54 and other Florida Statutes as set forth herein.

7.     This action lies in the Northern District of Florida, Pensacola Division, pursuant to 29 U.S.C. § 1391(b), because the action arose in this judicial district, and pursuant to 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices were committed in this judicial district.

8.     Plaintiff has complied with all conditions precedent and administrative remedies have been exhausted and jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f) and the Florida Civil Rights Act of 1992, as

amended, Chapter 760 et seq., Florida Statutes. On September 28, 2020, Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Relations ("FCHR" No.: 202127060) and the United States Equal Employment Opportunity Commission ("EEOC" No.: 15D202100008). On March 26, 2021, the FCHR made a determination pursuant to Fla. Stat. § 760.11(3). Plaintiff thereafter requested her ninety (90) day Notice of Right to Sue letter from the EEOC which was received on June 22, 2021.

## *PARTIES*

9.      Plaintiff is a Caucasian female who resides in Perdido Beach and is a citizen of the State of Alabama. Plaintiff was employed by Defendant, Touchpoint Support Services, LLC. ("TSS") in Pensacola, Florida as a Senior Operations Manager at Ascension Sacred Heart Hospital from May of 2017, until her unlawful termination on June 4, 2020.

10.      Defendant, Touchpoint Support Services, LLC. ("TSS") provides food and nutrition, environmental, and support services to hospital and healthcare organizations. Defendant has a contract to provide services to Ascension Sacred Heart Hospital located in Pensacola, Florida. Defendant is an employer within the meaning of, and as defined in, Title VII of the Civil Rights Act of 1964, as amended, 42 U.,S.C. 2000e, et seq.; the Americans with Disabilities Act, (ADA), 42 U.S.C. §§

12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008; 29

USCS §§ 2611 et seq. as it employees in excess of fifteen (15) employees.

<em><u>FACTS</u></em>

11.    Plaintiff is a Caucasian female.

12.    Plaintiff was employed by Defendant, Touchpoint Support Services,

LLC. ("TSS") in Pensacola, Florida.

13.    Plaintiff began her employment with Defendant in May 2017, as a

Housekeeper.

14.    On or about august 10, 2008, Plaintiff was promoted to an

Environmental Services Operations Manager at Ascension Sacred Heart Health.

15.    At the time of her termination, Plaintiff held the position of Senior

Environmental Services Operations Manager.

16.    During Plaintiff's employment with Defendant and prior to her

termination, she had not been the subject of any recent disciplinary action and she

performed the duties and responsibilities of her position in a more than satisfactory

manner.

17.    During her employment with Defendant, Plaintiff was diagnosed with

fibromyalgia and suffered from other medical issues including, debilitating

migraines, vertigo and having had a heart attack.

18.    At all times material hereto, Defendant was an employer within the

meaning of and as defined by the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

19.    Since 2018, Defendant had knowledge of Plaintiff's fibromyalgia, debilitating migraines, vertigo and heart attack when she informed Defendant of her medical issue and disability.

20.    Plaintiff is a qualified individual with a disability:

   (i)    he has a physical impairment that substantially limits one or more major life activities: Plaintiff suffers from concentration, mobility, bending, lifting and fatigue;

   (ii)    Plaintiff is under the treatment of a doctor for the care and treatment of his physical disabilities.

   (iii)    he has a record of such impairment; and,

   (iv)    he was regarded (perceived or otherwise) by Defendant as having such impairments.

21.    Plaintiff's disabilities substantially affected the major life activities of concentration, self-care, sleep and decreased mental acuity.

22.    Plaintiff had the ability to perform the essential functions of her position and did so without incident until she was terminated by Defendant.

23.    Plaintiff's Director was Mr. Eric Roman and in mid to late 2019, Mr. Allen, Assistant Director, became Plaintiff's supervisor.

24.    In January 2020, Plaintiff started to have issues pertaining to her health which inevitably led to going out on medical leave due to emergency gall bladder

surgery.

25.    As a result of needing emergency gall bladder surgery, Plaintiff filed for and went out on FMLA.

26.    Mr. Allen thereafter started harassing Plaintiff about her medical related absences and refused to discuss any type of accommodation.

27.    Mr. Allen was going around telling Plaintiff's co-workers that he was going to terminate her due to her health issues and having to take family medical leave all the time.

28.    Mr. Allen told Plaintiff's co-workers that she would be gone once Mr. Roman went out on leave, statements that he eventually made good on on June 4, 2020 when Plaintiff was terminated.

29.    Plaintiff is an openly homosexual female. Mr. Allen knew of Plaintiff's sexual orientation and made it known to Plaintiff and her co-workers that he disapproved of her sexual orientation choices and about her place as a female among males.

30.    At one point, Mr. Allen told Plaintiff that her balls were too big and she needed to stay in her place (as a female), that she was an overly aggressive and an outspoken gay woman and that attitude and open homosexuality would not take her far in this company.

31.    Mr. Allen on different occasions confronted Plaintiff asking her very

personal questions about her sexually orientation.

32.    Even though Plaintiff objected to the sexually orientated questions and that she was uncomfortable with answering these harassing questions, Mr. Allen persisted with his sexually harassing questions.

33.    Mr. Allen made statements to Plaintiff in front of others that she need to remember that she was a woman and too often she tried to play the man's role and again stated that her balls were too big and she needed to know her place.

34.    On one occasion, Plaintiff's partner (female) came to have dinner with her at work, afterword's, Mr. Allen approached Plaintiff and began to ask who played what role in the relationship (male and female), how long they had been together and then begin to ask Plaintiff about her past relationship with females as well and males, because she was the mother of two mixed children.

35.    Plaintiff tried to change the subject but Mr. Allen kept on with the sexual partner questions, insisting on knowing who was in the male role and who was in the woman's role.

36.    Mr. Allen went as far as inquiring about how the relationship worked since Plaintiff was such an "aggressive woman". Because Mr. Allen would not stop asking questions, even over Plaintiff's objections, she looked at her desk and pointed to the pictures and stated we had a relationship like any heterosexual couple would have.

37.     After Plaintiff objected to, reported and refused to discuss her sexual orientation any further with Mr. Allen, he thereafter refused to assist, train or help Plaintiff in any way with her employment with Defendant.

38.     Mr. Allen treated Plaintiff and other female employee differently than the male employees.

39.     Mr. Allen created and encouraged conflict between Plaintiff and another manager named John (male) who was allowed to sit at a conference room table with Plaintiff and scream and shout profanities at her for several hours while Mr. Allen present and did nothing to stop or report the behavior.

40.     Instead of terminating John for his aggressive behavior both verbally and physically Mr. Alan just ignored it and allowed it to continue.

41.     Plaintiff then reported Mr. Allen's sexual harassing behavior and comments to Human Resources, nothing was ever done but informing Mr. Allen of Plaintiff's complaints as he would recite them back to her almost word for word.

42.     Mr. Allen repeatedly told Plaintiff's co-workers that he wanted her gone.

43.     Plaintiff was told by other members in management to be careful because Mr. Allen had it out for her.

44.     Plaintiff was discharged on June 6, 2020, just weeks after she learned that Mr. Allen told her manager and operations director that he was going to get rid

8

of her because she was never there due to her health problems and use of FMLA and for reporting his sexually harassing behavior.

45.     Plaintiff received a call telling her that she was being terminated due to a mistake she made in payroll.

46.     The reasons given for Plaintiff's termination, were a pretext for Defendant's failure to remedy the sexual harassment and disability discrimination of Plaintiff by Mr. Allen and was in retaliation for her reporting the sexual harassment and discrimination against her because of her gender.

### *FIRST CAUSE OF ACTION*
*(Title VII - Gender Discrimination)*

47.     Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 46 of this complaint with the same force and effect as if set forth herein.

48.     Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of her gender in violation of the Title VII of the Civil Rights Act of 1964.

49.     Plaintiff is a Caucasian female.

50.     Plaintiff's workplace permeated with discriminatory intimidation, ridicule, and insult, as the result of Defendant's continued failure to address and stop the continual gender harassment of Plaintiff by Mr. Allen.

51.     During Plaintiff's employment with Defendant, she was subject to

unwelcome harassment, and discrimination because of her gender (female) by Mr. Allen.

52.    No male employees were the subject of harassment by Mr. Allen.

53.    The harassment Plaintiff was sufficiently severe and pervasive as Mr. Allen gender based harassment of Plaintiff was continual and occurred on a regular basis while employed by Defendant.

54.    Plaintiff reported the workplace harassment on more than one occasion and that the continued harassment was causing her anxiety and stress each time Mr. Allen came into the office. Defendant's failure to act on Mr. Allen's actions further resulted in tension and hostility towards Plaintiff from Defendant's HR as it simply forwarded Plaintiff's complaints to Mr. Allen who then repeated them to her almost word for word.

55.    Defendant's failure to act or put an end to the gender based harassment of Plaintiff by Mr. Allen resulted in her having anxiety and stress and further lead to her termination.

56.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practice unless and until this Court grants relief.

### SECOND CAUSE OF ACTION
*(Title VII - Retaliation)*

57.    Plaintiff repeats and re-alleges each and every allegation contained in

paragraph 1 through 46 of this complaint with the same force and effect as if set forth herein.

58.   Defendant retaliated against Plaintiff for availing herself of the protections afforded her pursuant Title VII of the Civil Rights Act of 1964.

59.   Plaintiff objected to, and refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule or regulation.

60.   Plaintiff is a Caucasian female.

61.   Plaintiff's workplace permeated with discriminatory intimidation, ridicule, and insult, as the result of Defendant's continued failure to address and stop the continual gender (female) based harassment of Plaintiff by Mr. Allen.

62.   During Plaintiff's employment with Defendant, she was subject to unwelcome harassment and retaliation by Mr. Allen.

63.   No male employees were the subject of harassment by Mr. Allen or Defendant.

64.   Plaintiff reported the workplace harassment on more than one occasion and that the continued harassment was causing her anxiety and stress each time Mr. Allen came into the office. Defendant's failure to act on Mr. Allen's actions further resulted in tension and hostility towards Plaintiff from Defendant's HR as it simply forwarded Plaintiff's complaints to Mr. Allen who then repeated them to her almost word for word.

65.    Defendant's failure to act or put an end to the gender based harassment of Plaintiff by Mr. Allen resulted in her having anxiety and stress and further lead to her termination.

66.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practice unless and until this Court grants relief.

### THIRD CAUSE OF ACTION
*(Title VII Sexual Harassment/Hostile Work Environment)*

67.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 46 of this complaint with the same force and effect as if set forth herein.

68.    Plaintiff was the subject of workplace harassment through continued and ongoing adverse working conditions and treatment by Defendant which created a hostile working environment in violation of Title VII of the Civil Rights Act of 1964.

69.    Plaintiff objected to, and refused to participate in, any activity, policy, or practice by Mr. Allen or Defendant which is in violation Title VII of the Civil Rights Act of 1964.

70.    Plaintiff is a Caucasian female who was subjected to unwelcome harassment because of her gender and sexual orientation.

71.     The harassment Plaintiff was subjected to by Mr. Allen, and condoned by Defendant, was severe and pervasive which created a sexually charged, discriminatorily abusive working environment.

72.     Plaintiff is an openly homosexual female. Mr. Allen knew of Plaintiff's sexual orientation and made it known to Plaintiff and her co-workers of his disapproval of her sexual orientation choices and about her place as a female among males.

73.     At one point during Mr. Allen told Plaintiff that her balls were too big and she needed to stay in her place (as a female), that she was an overly aggressive and an outspoken gay woman and that attitude and open homosexuality would not take her far in this company.

74.     Mr. Allen on different occasions confronted Plaintiff asking her very personal questions about her sexually orientation.

75.     Even though Plaintiff objected to the sexually orientated questions and that she was uncomfortable with answering these harassing questions, Mr. Allen persisted with his sexually harassing questions.

76.     Mr. Allen made statements to Plaintiff in front of others that she need to remember that she was a woman and too often she tried to play the man's role and again stated that her balls were too big and she needed to know her place.

77.    On one occasion, Plaintiff's partner (female) came to have dinner with her at work, afterword's, Mr. Allen approached Plaintiff and began to ask who played what role in the relationship (male and female), how long we had been together and then begin to ask Plaintiff about her past relationship with females as well and males, because she was the mother of two mixed children.

78.    Plaintiff tried to change the subject but Mr. Allen kept on with the sexual partner questions, insisting on knowing who was in the male role and who was in the woman's role.

79.    Mr. Allen went as far as inquiring about how the relationship worked since Plaintiff was such an "aggressive woman". Because Mr. Allen would not stop asking questions, even over Plaintiff's objections, she looked at her desk and pointed to the pictures and stated we had a relationship like any heterosexual couple would have.

80.    After Plaintiff objected to and refused to discuss her sexual orientation with Mr. Allen, he thereafter refused to assist, train or help Plaintiff in any way with her employment with Defendant.

81.    Plaintiff's reporting and objecting to such a sexually charged, discriminatorily abusive working environment which ultimately led to the termination of her employment with Defendant.

82.    Plaintiff's workplace was permeated with discriminatory intimidation,

ridicule, and insult, as the result of Defendant's continued failure to address and stop the continual sexual harassment of Plaintiff by Mr. Allen.

83.     During Plaintiff's employment with Defendant, she was subject to unwelcome sexual harassment and sexual advances by Mr. Allen.

84.     No male employees were the subject of harassment by Defendant.

85.     The harassment Plaintiff was sufficiently severe and pervasive as Mr. Allen's sexually harassing actions were continual and on a regular basis while employed by Defendant.

86.     Plaintiff reported the workplace sexual harassment on more than one occasion and that the continued harassment was causing her anxiety and stress each time Mr. Allen came into the office. Defendant's failure to act on Mr. Allen's actions further resulted in tension and hostility towards Plaintiff.

87.     Defendant knowingly failed to exercise reasonable care to prevent and correct promptly Mr. Allen's sexually harassing behavior of Plaintiff.

88.     Mr. Allen's harassment and Plaintiff's subsequent reporting resulted in her termination.

89.     Defendant's failure to act or put an end to the sexual harassment of Plaintiff resulted in her having anxiety and stress and further lead to her termination.

90.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practice unless and

until this Court grants relief.

### FOURTH CAUSE OF ACTION
*(DISABILITY - AMERICANS WITH DISABILITIES ACT, (ADA), 42 U.S.C. §§ 12111-12117, 12203; THE AMERICANS WITH DISABILITIES ACT AMENDMENTS OF 2008 (ADAA))*

91.    Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 46 of this complaint with the same force and effect as if set forth herein.

92.    This is an action to remedy discrimination on the basis of Plaintiff's disability in the terms, conditions, and privileges of his employment with Defendant in violation of the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

93.    At all times material hereto, Plaintiff was an employee of Defendant within the meaning of Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

94.    At all times material hereto, Defendant was an employer within the meaning of Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008, as the Defendant employed more than 15 employees.

95.    During her employment with Defendant, Plaintiff was diagnosed with fibromyalgia and suffered from other medical issues including, debilitating migraines, vertigo and having had a heart attack.

16

96.     At all times material hereto, Defendant was an employer within the meaning of and as defined by the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

97.     Since 2018, Defendant had knowledge of Plaintiff's fibromyalgia, debilitating migraines, vertigo and heart attack when she informed Defendant of her medical issue and disability.

98.     Plaintiff is a qualified individual with a disability:

   (i)     he has a physical impairment that substantially limits one or more major life activities: Plaintiff suffers from concentration, mobility, bending, lifting and fatigue;

   (ii)    Plaintiff is under the treatment of a doctor for the care and treatment of his physical disabilities.

   (iii)   he has a record of such impairment; and,

   (iv)    he was regarded (perceived or otherwise) by Defendant as having such impairments.

99.     Plaintiff's disabilities substantially affected the major life activities of concentration, self-care, sleep and decreased mental acuity.

100.    Plaintiff had the ability to perform the essential functions of her position and did so without incident until she was terminated by Defendant.

101.    Plaintiff's Director was Mr. Eric Roman and in mid to late 2019, Mr. Allen, Assistant Director, became Plaintiff's supervisor.

102.    In January 2020, Plaintiff started to have issues pertaining to her health

which inevitably led to going out on medical leave due to emergency gall bladder surgery.

103.   As he result of needing emergency gall bladder surgery, Plaintiff filed for and went out on FMLA.

104.   Mr. Allen started harassing Plaintiff about her medical related absences and refused to discuss any type of accommodation, but instead discriminated against her.

105.   Mr. Allen was going around telling Plaintiff's co-workers that he was going to terminate her due to her health issues and having to take family medical leave all the time.

106.   Mr. Allen told Plaintiff's co-workers that she would be gone once Mr. Roman went out on leave.

107.   Any possible assertion that there was a viable business justification for the Plaintiff's termination, is entirely *pretextual* for Defendant's retaliation and discrimination against her for engaging in a protective activity and for any actual or perceived disability.

108. The adverse personnel action, the termination of Plaintiff's employment clearly violated Plaintiff's right under the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act

Amendments of 2008, and such action clearly constituted a prohibited employment practice, contrary to the public policy of the ADAA.

109.   As a result of the Defendant's violations of the Americans with Disabilities Act and Amendments, the Plaintiff has been substantially damaged, in that she has lost wages, associated job benefits; and in addition, she has sustained compensatory damages, based upon emotional distress, associated with the wrongful, unlawful and retaliatory demotion that lead to his discharge from Defendant's employment.

110.   As a result of being wrongfully and unlawfully retaliatory actions that lead to her discharge from Defendant's employment, Plaintiff has been experiencing anxiety and difficult economic circumstances, resulting from the unlawful discharge; and the Plaintiff has also sustained continued mental and psychological distress, due to the unlawful dismissal from employment.

111.   Plaintiff has retained the undersigned attorney to assist her, in the prosecution of this action, and she is obligated to pay said attorney a reasonable fee for his professional services.

112.   Plaintiff is entitled to recovery of reasonable attorney's fees and costs pursuant to Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

## *FIFTH CAUSE OF ACTION*
### *(DISABILITY RETALIATION - AMERICANS WITH DISABILITIES ACT, (ADA), 42 U.S.C. §§ 12111-12117, 12203; THE AMERICANS WITH DISABILITIES ACT AMENDMENTS OF 2008 (ADAA))*

113.     Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 46 of this complaint with the same force and effect as if set forth herein.

114.     This is an action to remedy discrimination on the basis of Plaintiff's disability in the terms, conditions, and privileges of his employment with Defendant in violation of the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

115.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

116.     At all times material hereto, Defendant was an employer within the meaning of Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008, as the Defendant employed more than 15 employees.

117.     During her employment with Defendant, Plaintiff was diagnosed with fibromyalgia and suffered from other medical issues including, debilitating migraines, vertigo and having had a heart attack.

118.     At all times material hereto, Defendant was an employer within the

meaning of and as defined by the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

119. Since 2018, Defendant had knowledge of Plaintiff's fibromyalgia, debilitating migraines, vertigo and heart attack when she informed Defendant of her medical issue and disability.

120. Plaintiff is a qualified individual with a disability:

> (i) he has a physical impairment that substantially limits one or more major life activities: Plaintiff suffers from concentration, mobility, bending, lifting and fatigue;
>
> (ii) Plaintiff is under the treatment of a doctor for the care and treatment of his physical disabilities.
>
> (iii) he has a record of such impairment; and,
>
> (iv) he was regarded (perceived or otherwise) by Defendant as having such impairments.

121. Plaintiff's disabilities substantially affected the major life activities of concentration, self-care, sleep and decreased mental acuity.

122. Plaintiff had the ability to perform the essential functions of her position and did so without incident until she was terminated by Defendant.

123. Plaintiff's Director was Mr. Eric Roman and in mid to late 2019, Mr. Allen, Assistant Director, became Plaintiff's supervisor.

124. In January 2020, Plaintiff started to have issues pertaining to her health which inevitably led to going out on medical leave due to emergency gall bladder

surgery.

125.   As he result of needing emergency gall bladder surgery, Plaintiff filed for and went out on FMLA.

126.   Mr. Allen started harassing Plaintiff about her medical related absences and refused to discuss any type of accommodation, but instead discriminated against her.

127.   Mr. Allen was going around telling Plaintiff's co-workers that he was going to terminate her due to her health issues and having to take family medical leave all the time.

128.   Mr. Allen told Plaintiff's co-workers that she would be gone once Mr. Roman went out on leave.

129.   Any possible assertion that there was a viable business justification for the Plaintiff's termination, is entirely *pretextual* for Defendant's retaliation and discrimination against him for engaging in a protective activity and for any actual or perceived disability.

130.   The adverse personnel action, the termination of Plaintiff's employment clearly violated Plaintiff's right under the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008, and such action clearly constituted a prohibited employment practice, contrary to the public policy of the ADAA.

131.     As a result of the Defendant's violations of the Americans with Disabilities Act and Amendments, the Plaintiff has been substantially damaged, in that he has lost wages, associated job benefits; and in addition, he has sustained compensatory damages, based upon emotional distress, associated with the wrongful, unlawful and retaliatory demotion that lead to his discharge from Defendant's employment.

132.      As a result of being wrongfully and unlawfully retaliatory actions that lead to his discharge from Defendant's employment, Plaintiff has been experiencing anxiety and difficult economic circumstances, resulting from the unlawful discharge; and the Plaintiff has also sustained continued mental and psychological distress, due to the unlawful dismissal from employment.

133.     Plaintiff has retained the undersigned attorney to assist him, in the prosecution of this action, and he is obligated to pay said attorney a reasonable fee for his professional services.

134.     Plaintiff is entitled to recovery of reasonable attorney's fees and costs pursuant to Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

## *SIXTH CAUSE OF ACTION*
### (FMLA RETALIATION)

135.   Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 46 of this complaint with the same force and effect as if set

forth herein.

136.   Plaintiff's Director was Mr. Eric Roman and in mid to late 2019, Mr. Allen, Assistant Director, became Plaintiff's supervisor.

137.   In January 2020, Plaintiff started to have issues pertaining to her health which inevitably led to going out on medical leave due to emergency gall bladder surgery.

138.   As he result of needing emergency gall bladder surgery, Plaintiff filed for and went out on FMLA.

139.   Mr. Allen started harassing Plaintiff about her medical related absences and refused to discuss any type of accommodation, but instead discriminated against her.

140.   Mr. Allen was going around telling Plaintiff's co-workers that he was going to terminate her due to her health issues and having to take family medical leave all the time.

141.   Mr. Allen told Plaintiff's co-workers that she would be gone once Mr. Roman went out on FMLA leave.

*142.*   Plaintiff's claim of retaliation under the FMLA.

*143.*   Plaintiff availed himself of a protected right under the FMLA.

*144.*   Plaintiff suffered an adverse employment decision as she was terminated on June 5, 2020.

145. Defendant's decision was directly related to Plaintiff's FMLA protected activity.

*146.* Defendant retaliation was motivated by its impermissible retaliatory or discriminatory animus towards Plaintiff for asserting his rights under the FMLA.

147. Defendant knew that Plaintiff was being targeted and retaliated against by Mr. Allen for her taking FMLA leave and that certain absences were for qualifying FMLA reasons. Nevertheless, Defendant knowing terminated Plaintiff's employment.

*148.* When Plaintiff tried to point out she was being targeted by Mr. Allen for absences were covered by her FMLA leave, Defendant refused to address the issue and proceeded forward termination.

149. Defendant unlawfully retaliated against Plaintiff for asserting her federally protected rights under the Family and Medical Leave Act when Defendant had sufficient knowledge that Plaintiff was being targeted by Mr. Allen for her FMLA leave, Defendant still chose to terminate her.

*150.* Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

151.   Plaintiff has retained the undersigned attorney to assist her, in the prosecution of this action, and she is obligated to pay said attorney a reasonable fee for his professional services.

*152.*   Plaintiff is entitled to recovery of reasonable attorney's fees and costs pursuant to the FMLA.

## *PRAYER FOR RELIEF*

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment:

a)   Declaring the acts and practices complained of herein are violation of the Title VII, ADA/ADAA, and FMLA;

b)   Enjoining and permanently restraining those violations of the Title VII, ADA/ADAA, and FMLA;

c)   Directing the Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practice are eliminated and do not continue to affect Plaintiff's employment opportunities;

d)   Directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory treatment of him and make her whole for all earnings she would have received but for Defendant's discriminatory treatment, including but not limited to, wages (past and future), pension, and other lost benefits.

e)   Awarding Plaintiff Front Pay in lieu of reinstatement;

f)      Awarding Plaintiff compensatory damages;

g)      Awarding Plaintiff Liquidated damages;

h)      Awarding Plaintiff such other equitable relief as the Court deems just and proper in the premises.

i)      Awarding Plaintiff the costs of this action together with a reasonable attorney's fees; and,

j)      Granting such other and further relief as the Court deems just and proper in the premises.

### *DEMAND FOR JURY TRIAL*

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

Dated: September 13, 2021.      By: */s/ Clayton M. Connors*

CLAYTON M. CONNORS
Florida Bar No.: 0095553
Email: cmc@westconlaw.com
**THE LAW OFFICES OF**
**CLAYTON M. CONNORS, PLLC.**
4400 Bayou Blvd., Suite 32A
Pensacola, Florida 32503
Tel:  (850) 473-0401
Fax: (850) 473-1388

Attorney for the Plaintiff,

27